Admitted 1/13/04

                    At a Term of the Appellate Division of the Supreme
               Court held in and for the First Judicial Department in
               the County of New York on September 28, 2010.


Present:   Hon. Peter Tom,                    Justice Presiding,
                Richard T. Andrias
                David Friedman
                Eugene Nardelli
                Rosalyn H. Richter,           Justices.      **FILED**

---------------------------------------X
In the Matter of Alireza Dilmaghani,                    SEP 28 2010
an attorney and counselor-at-law:
                                                    SUP COURT, APP. DIV.
                                                       FIRST DEPT.
     Departmental Disciplinary Committee      **M-5210**
     For the First Judicial Department,       **M-5718**
                    Petitioner,

Alireza Dilmaghani,
     (OCA Atty Reg. No. 2816437),
                    Respondent.
---------------------------------------X

        The Departmental Disciplinary Committee for the First
Judicial department, by Alan W. Friedberg, its Chief Counsel
(Naomi F. Goldstein, of counsel), having presented a petition
to this Court on December 29, 2009, seeking an order pursuant
to Judiciary Law § 90, 22 NYCRR 603.4(d) and 605.15(e)(1),
confirming the determination of the Hearing Panel that respondent
(who was admitted to practice as an attorney and counselor-at-law
in the State of New York at a Term of the Appellate Division of
the Supreme Court for the Third Judicial Department on April 15,
1997) had engaged in acts of professional misconduct in violation
of DR 7-101(A); DR 1-102(A)(5); DR 1-102(A)(4); DR 6-101 (A)(1);
DR 1-102(A)(7); DR 6-101(A)(3); DR 7-106(A); DR 2-106(B)
and DR 2-110(A)(3) of the Lawyers' Code of Professional
Responsibility and recommending that respondent be suspended
from the practice of law in the State of New York for no less
than 18 months (M-5210),

(M-5210/M-5718)                -2-                September 28, 2010

**MISC10-0694**

    And respondent, by counsel, Richard M. Maltz, Esq., having submitted a cross motion and memorandum of law in opposition to the petition and in support of an order confirming the Referee's findings of fact, conclusion of law and the recommendation of a sanction of public censure (M-5718),

    And the Committee having submitted a reply affirmation to the cross motion and memorandum of law,

    Now, upon reading and filing the papers with respect to the petition and cross motion, and due deliberation having been had thereon, and upon the Opinion Per Curiam filed herein, it is unanimously,

    Ordered that the petition is granted confirming so much of the determination of the Hearing Panel that finds that respondent had engaged in professional misconduct, as indicated, and disaffirmed with respect to the recommendation that respondent be subject to a sanction of an 18 month suspension and respondent is suspended from the practice of law in the State of New York for a period of three (3) years, effective October 28, 2010 and until further order of this Court, and it is further,

    Ordered that the cross motion is denied, and it is further,

    Ordered that respondent is commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another; that respondent is forbidden to appear as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority; that respondent is forbidden to give to another an opinion as to the law or its application or any advice in relation thereto, all effective October 28, 2010. Respondent is directed to fully comply with the provisions of Title 22, Section 603.13, of the Rules of this Court, a copy of which is annexed hereto and made a part hereof.

APPELLATE DIVISION SUPREME COURT FIRST DEPARTMENT   ENTER:
STATE OF NEW YORK

I, DAVID SPOKONY, Clerk of the Appellate Division of the Supreme Court First Judicial Department, do hereby certify that I have compared this copy with the original thereof filed in said office on 09/28/2010, and that the same is a correct transcript thereof, and of the whole of said original.
IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court
09/28/2010

Clerk.

CLERK

SUPREME COURT, APPELLATE DIVISION
FIRST JUDICIAL DEPARTMENT

SEP 28 2010

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★  OCT 1 2 2010  ★

BROOKLYN OFFICE

MISC10-0094

COGAN, J.

Peter Tom,                    Justice Presiding
Richard T. Andrias
David Friedman
Eugene Nardelli
Rosalyn H. Richter,           Justices.

-------------------------------------x

In the Matter of Alireza Dilmahani,
an attorney and counselor-at law:

    Departmental Disciplinary Committee          M-5210
    for the First Judicial Department,        -  M-5718
                    Petitioner,

    Alireza Dilmaghani,
                    Respondent.

-------------------------------------x


Disciplinary proceedings instituted by the Departmental
Disciplinary Committee for the First Judicial Department.
Respondent, Alireza Dilmaghani, was admitted to the Bar of the
State of New York at a Term of the Appellate Division of the
Supreme Court for the Third Judicial Department on April 15,
1997.

    Alan W. Friedberg, Chief Counsel, Departmental
    Disciplinary Committee, New York
    (Naomi F. Goldstein, of counsel), for petitioner.

    Richard M. Maltz, for respondent.

M-5210 and M-5718 - December 29, 2009

**IN THE MATTER OF ALIREZA DILMAGHANI, AN ATTORNEY**

**PER CURIAM**

Respondent was admitted to the practice of law in the State of New York by the Third Judicial Department on April 15, 1997, and at all times relevant to this matter has maintained an office for the practice of law within the First Judicial Department.

Although admitted in 1997, respondent did not begin to practice law until October 2003, when he became an associate at the Furman Law Firm, which concentrated in post-conviction motion practice in criminal matters. The principal of the Furman Law Firm was Daniel Furman, who employed as an associate, in addition to respondent, Antoinette Wooten, an attorney admitted only in New Jersey. Upon Mr. Furman's death in March 2004, respondent became the attorney for his estate, and formed his own law firm, variously named the New Furman Law Firm, Furman Law Offices, or Furman Law Firm, consisting only of himself.

In June 2008, the Departmental Disciplinary Committee (Committee) served respondent with a notice of 19 disciplinary charges against him, to which a 20th charge was added by pre-hearing stipulation. The charges against respondent relate to his dealings with 13 clients of the Furman Law Firm and their cases after Mr. Furman's death. The charges involve allegations that respondent made misrepresentations to a Federal Magistrate Judge and the Committee, disregarded a court order, neglected

legal matters, undertook legal matters he was not competent to
handle, interacted with clients and colleagues in an abusive
manner, charged excessive fees, charged non-refundable retainers,
disseminated deceptive advertising, and failed to keep records,
in violation of 10 Disciplinary Rules: DR 1-102(A)(4), (5), and
(7); 2-101(A); 2-106, 2-110(A)(3), 6-101(A)(1) and (3); 7-101(A);
and 7-106(A).

The Referee, after receiving evidence, sustained 9 of the 20
charges, and recommended a sanction of public censure.  The
Hearing Panel disagreed to the extent of sustaining 19 charges
and recommending a sanction of an 18-month suspension.  The
Committee now moves to confirm the Hearing Panel's findings of
misconduct and its recommendation that an 18-month suspension be
imposed.  Respondent cross moves to confirm the Referee's report
and his recommendation that respondent be publicly censured; in
the event that this Court sustains any or all of the charges the
Referee dismissed, respondent requests a 3-month suspension.

The 19 charges sustained by the Hearing Panel (the Committee
no longer pursues charge 17) may be summarized as follows:

The Baron Erby Matter (Charges 1-5)

Charge 1 alleges that, by failing to file a reply to the
People's opposition to Erby 's federal habeas corpus petition,
and belatedly filing a motion to hold the petition in abeyance,
when he had been specifically retained on the petition,

3

respondent failed to seek the lawful objectives of the client (DR 7-101[A]).

Charge 2 alleges that respondent's failure to advise the Magistrate presiding over the Erby matter of his change of address caused delay while the court tried to locate him, which was prejudicial to the administration of justice (DR 1-102[A][5]).

Charge 3 alleges that respondent's statement to the Magistrate that Erby had not retained him was false (DR 1-102[A][4]).

Charge 4 alleges that, by representing Erby on the habeas petition when he knew he was not competent to handle it without associating with an experienced attorney, respondent violated DR 6-101(A)(1).

Charge 5 alleges that respondent's overall handling of the Erby matter adversely reflects on his fitness to practice law DR 1-102[A][7]).

The Nancy Schmelzer Powers Matter (Charges 6-8)

Charge 6 alleges that, by failing to file a response to the People's answer to Powers's federal habeas corpus petition, respondent neglected a legal matter (DR 6-101[A][3]).

Charge 7 alleges that, by failing to inform the United States District Court for the Western District of New York of his admission status in that district, as directed, he disregarded a

4

ruling of a tribunal (DR 7-106[A]).

Charge 8 alleges that respondent's statements to the Committee that he never committed to representing Powers and that he did not have her file were false (DR 1-102[A][4]).

The Lentworth A. Brown Matter (Charge 9)

Charge 9 alleges that respondent's telling Brown that he did not know who he was and had nothing to do with his case, after filing a brief on his behalf and inviting Brown to retain him after Furman's death, adversely reflected on his fitness to practice law (DR 1-102[A][7]).

The Moses James Matter (Charges 10-12)

Charge 10 alleges that, by failing to complete his representation of James, respondent neglected a legal matter (DR 6-101[A][3]).

Charge 11 alleges that respondent's letter to James insisting that he had nothing to do with his case adversely reflects on his fitness to practice law (DR 1-102[A][7]).

Charge 12 alleges that respondent's failure to retain any documentary evidence that he had returned James's file, as he had committed to do, also adversely reflected on his fitness to practice law (DR 1-102[A][7]).

The Edward Guzman, Veronica Sullivan, Luis Burgos-Santos, and Susano Pagan Matters (Charge 13)

Charge 13 alleges that respondent's failure to account for the disposition of the files of the above-listed clients

5

adversely reflects on his fitness to practice law (DR 1-102[A][7]).

The Terrance Scott, Daniel McQueen, Javier Pacheco, and Marcus Telesford Matters (Charges 14-16)

Charge 14 alleges that respondent charged Scott an excessive fee, in violation of DR 2-106(B), by charging $7,575 over and above the $4,500 retainer already paid, and by failing to maintain any time records to justify the fee.

Charge 15 alleges that respondent's denial to the Committee that he represented Scott was false (DR 1-102[A][4]).

Charge 16 alleges that the non-refundable retainer agreements with Scott, McQueen, Pacheco, and Telesford adversely reflected on respondent's fitness to practice law (DR 1-102[A][7]) and contravened DR 2-110(A)(3), which requires the return of unearned fees.

Advertising (Charge 18)

Charge 18 alleges that respondent violated DR 1-102(A)(4) (prohibiting "conduct involving dishonesty, fraud, deceit, or misrepresentation") by engaging in false advertising. Specifically, he promulgated -- only six months after he started practicing law, and one month after he started a solo practice -- a form letter making the following statements:

> "My team of attorneys has hundreds of years of combined experience . . . . My team is made up of trial lawyers and includes former prosecutors.  Over the years we have worked on every type of criminal and civil case you can imagine.  We know every trick in the book that

6

was used to convict you."

In addition, from 2005 to May 2006, respondent maintained a website on which he claimed to be an "expert" in state and federal post-conviction motions who had "handled at least one hundred criminal cases," and asserted that "[f]ew attorneys have spent as much time in the courtrooms of this city" as he had.

Totality of Conduct (Charge 19)

Charge 19 alleges that all of the other charges evinced a pattern of conduct that adversely reflects on respondent's fitness to practice law (DR 1-102[A][7]).

The Jose Vaello Matter (Charge 20)

Charge 20 concerns respondent's communications with assigned appellate counsel for Vaello, whom respondent and Wooten (respondent's associate at the Furman Law Firm) had represented at the trial that resulted in Vaello's conviction for rape and other crimes. After Vaello's conviction, his appellate counsel (Claudia Trupp and Robert Dean of the Center for Appellate Litigation) moved to vacate the judgment on the ground that respondent and Wooten had rendered ineffective assistance of counsel at trial; the motion was ultimately granted. The charge alleges that respondent's letters and messages directed to Trupp and Dean, protesting their claim that he had rendered Vaello ineffective assistance of counsel at trial, adversely reflect on

7

his fitness to practice law (DR 1-102[A][7]).[1]

By pre-hearing stipulation, respondent conceded the material facts underlying the charges, but contested liability, arguing that he had not acted with the intent required to render his conduct violative of the disciplinary rules.  On the Committee's motion to confirm, respondent concedes liability on the nine charges sustained by the Referee (charges 1, 4, 6, 7, 11, 14, 16, 18 and 20), and contests liability on the ten charges rejected by the Referee but sustained by the Hearing Panel (charges 2, 3, 5, 8, 9, 10, 12, 13, 15, and 19).  We confirm the Hearing Panel's finding of liability against respondent on each of these remaining contested charges.

Respondent contends that charge 2 should be dismissed

---

[1]The particulars of charge 20 are as follows.  Upon reviewing Trupp's affirmation in support of the motion to set aside Vaello's conviction, respondent wrote her a letter stating that he intended to sue her for defamation and to report her to the Committee, concluding with the following warning: "I will further fully cooperate with the DA to destroy your stupid and deceitful argument about my representation of Mr. Vaello.  In my humble opinion, you are truly not only an incompetent lawyer, but a liar as well.  Further, you may very well have committed [perjury]."  The following day, respondent left five voice messages on Trupp's answering machine, telling her that she was in "deep trouble" because he would sue her for defamation and civil rights violations and report her to the Committee; he also stated that his father was a "wealthy man" who had "access to the very best lawyers in this town."  Respondent also sent a letter to, and left a voicemail message for, Trupp's supervisor, Robert Dean, threatening him, Trupp, and the Center with "millions of dollars" of litigation, criminal proceedings, and disciplinary action, and accusing Dean of "stupidity and . . . lack of authority and supervision over [his] incompetent staff attorneys."

8

because his failure to notify the Magistrate of his change of
address was inadvertent, and therefore was not prejudicial to the
administration of justice (DR 1-102[A][5]).   Intent is not an
element of that Disciplinary Rule, although it may be considered
in mitigation of a sanction (*see Matter of Berger*, 1 AD3d 83
[2003]), and the failure to notify a court of a change of address
is prejudicial to the administration of justice (*cf. Matter of
Fletcher*, 58 AD3d 254 [2008] [failure to inform OCA of address
change within 30 days, pursuant to Judiciary Law § 468-a, is
prejudicial to administration of justice]).   Moreover,
respondent's failure to update his address caused delays in the
case and wasted judicial resources as the court tried to locate
him.

Respondent argues that the Panel should have deferred to the
Referee's credibility determinations that he did not
intentionally mislead anyone regarding his professional
obligations to Erby, Powers, or Scott (<u>charges 3, 8, and 15</u>,
respectively; DR 1-102[A][4]).   According to respondent, he
subjectively believed, when queried by the Magistrate, that Erby
had hired the Furman Law Firm (primarily to pursue state
remedies) and he agreed only to help out on a pro bono basis.
The Panel properly drew the opposite inference from the

9

documentary evidence.[2]  With respect to Powers, respondent filed her habeas petition and asked the court to serve him with any response.  He told Powers that he had spent 10 days working on that matter.  His statement to Powers that he "had to use the Party in Interest format" because he "could find no one willing to act as local counsel," could support the interpretation that he used that "format" because of the geographical distance or because he was not admitted in that jurisdiction.  Having, by his own admission, worked on Powers's state filings as attorney of record and at least in an advisory capacity on her federal application, respondent cannot truthfully blame his failure to return her files on Furman's filing system; in fact, he contradictorily states that all client files were returned.  As to Scott, respondent's charging Scott an initial retainer fee, writing regarding the case, and billing for additional legal research after he was terminated belies his claim that he never represented Scott and communicated with him only briefly "as

---

[2]Among other things, the documentary evidence concerning Erby's case establishes the following: (1) Erby's wife paid a retainer after Furman died and specifically for "federal litigation 2254" (referring to 28 USC § 2254); (2) respondent personally wrote to Erby welcoming him to the firm and stating that once the "client intake forms" were fully executed he could "begin the investigative process, and [the] crafting of a collateral attack plan"; (3) respondent petitioned the court "to substitute him in place of [Erby], who [was] acting pro se"; and (4) Erby repeatedly wrote to respondent inquiring as to the status of his habeas petition and expressing his own belief that respondent had "tak[en] over as counsel."

10

probate counsel" for Furman's estate.

Accordingly, the evidence supports the Panel's determinations regarding charges 3, 8, and 15, based on DR 1-102(A)(4). Furthermore, the Panel was not confined to the "cold record," as respondent asserts, but had an opportunity to assess his credibility when he appeared before the Panel for a hearing.

In dismissing charge 5 (alleging that respondent's handling of the Erby matter adversely reflects on his fitness to practice law), the Referee stated that the shortcomings of respondent's performance in that matter reflected inexperience, as opposed to incompetence, and therefore did not adversely reflect on his fitness to practice law (DR 1-102[A][7]). Although inexperience alone is not objectionable, taking on a matter one is not capable of handling is a disciplinary infraction, as respondent concedes. Moreover, charge 5 was not premised on alleged incompetence, but on the totality of respondent's misconduct in the Erby matter (failure to seek his client's lawful objectives, accepting representation on a case he was not cable of handling, making a misrepresentation to the court, and failing to notify the court of his change of address). Accordingly, the Hearing Panel correctly sustained charge 5.

Charge 9 arose from respondent's sending Brown a letter addressed to "all clients of the Daniel C. Furman Law Firm,"

11

stating that respondent was merely "the probate attorney for the

Estate of Daniel C. Furman" and, as such, had nothing to do with

the recipients' cases and did not know who they were.  Respondent

sent this form letter to Brown notwithstanding that respondent

had filed a brief with the Second Department on Brown's behalf,

had corresponded with him about the case, and had received from

Brown an executed representation agreement.  Even if respondent's

sending the form letter was the result of poor office management,

as the Referee concluded, running an office in a disorganized

manner adversely reflects on a lawyer's fitness to practice in

violation of DR 1-102(A)(7) (see Matter of Ioannou, 47 AD3d 65

[2007]).  Moreover, the tone of the letter, stating that any

client who wished to speak to respondent would have to make an

appointment and pay for it, and those without an appointment

would be "uninvited guest[s] and .. handle[d] accordingly,"

lacked civility and professionalism.  Accordingly, the Panel

properly sustained charge 9.

    Contrary to the Referee's implication, DR 1-102(A)(7)

(conduct adversely reflecting on fitness to practice) does not

require intent, and respondent's failure to return client files

to James, Guzman, Sullivan, Burgos-Santos, and Pagan, and to

account for the disposition of any other file, adversely

reflected on his fitness to practice, even if the conduct was the

result of his poor office management skills (see Ioannou, 47 AD3d

12

65). Accordingly, the Panel properly sustained charges 12 and 13.

With regard to charge 10, although respondent sent the relatives of Moses James a letter stating that he was working on the case and would inform James of an attack plan within six weeks, eight weeks later respondent sent James a letter advising that the Furman Law Firm had ceased to exist, that James was now unrepresented, and that respondent would return the client's file. When James inquired, respondent sent him the same form letter discussed in connection with charge 9, stating that respondent was merely a probate attorney, did not know who James was, and had no involvement in his case. Those communications support the Panel's inference that respondent neglected the client matter (charge 10, DR 6-101[A][3]).

Finally, the totality of respondent's conduct, involving multiple clients, several acts of dishonesty, and continuous incivility towards clients and other attorneys, adversely reflects on his fitness to practice (DR 1-102[A][7]), and therefore the Panel properly sustained charge 19.

With respect to sanction, respondent maintains that he should not be held accountable for "unjust and unsupportable claims by inmates who would allege anything." He asserts that he was merely an inexperienced attorney who "did the best he could" in attempting to clean up the mess allegedly left by Furman, "who

13

was dishonest and incompetent." Respondent claims that he now keeps times sheets of his activities and a "very careful filing system." He says that he only takes on simple cases and refers matters he does not feel capable of handling. He represents that he now realizes that once he appears in a case he is responsible for every aspect, and promises to refund any unearned fees. In addition, he asserts that he is trying to deal with his anger-management problem, and, henceforth, will always comport himself in a professional manner, no matter how much he is provoked. He recognizes that, rather than threatening Trupp and Dean in the Vaello matter (the basis of charge 20), it would have been preferable to file a disciplinary complaint if (as he believed) their claims of the ineffectiveness of his performance as trial counsel were unjustified (although their motion to vacate the conviction based on his ineffectiveness was ultimately granted). He submitted letters of support from three attorneys, none of whom claimed to know him well or to have substantial familiarity with his legal practice or professional reputation.

The Hearing Panel noted that respondent's character witnesses had no knowledge of his professional career, and that no attorney confirmed his contention that he seeks advice from others in matters where he lacks experience. The Panel also noted that respondent failed to produce the time records he claimed to now keep. The Panel found respondent's expression of

14

remorse to be inadequate, in that he attempted to blame his conduct on his clients' "'creating a bad environment,'" and he failed to "appreciate the anguish that he caused the incarcerated prisoners and their families." His demeanor at the hearing before the Panel did not denote sincere remorse, and the Panel credited him "at best . . . for recognizing that he should have handle[d] things differently." Under all the circumstances, including the multiple charges, "numerous inconsistencies" in respondent's testimony, his "complete lack of professionalism," his "dubious" expression of contrition and remorse, the Panel recommended a suspension of 18 months "to communicate to Respondent the seriousness of his conduct." The Panel further "strongly recommend[ed]" that respondent seek professional help to control his anger, and that he be required to submit proof on that issue if he applies for readmission.

Like the Hearing Panel, we are not entirely persuaded by respondent's claims of contrition and intention to change. His continued attempts to blame his clients and Furman, at least partially, for his own misconduct supports the Hearing Panel's finding that he lacks sincere remorse or insight into his deficiencies. His lack of experience as a lawyer does not excuse his hostile language toward Trupp and Dean or his cavalier attitude regarding the maintenance and return of client files. Respondent's claims of selfless pro bono work are undermined by

15

his bills for fees and his assertion that his only obligation

toward nonpaying clients was to file their court papers and mail

their files.  In light of his inability to substantiate that he

returned client files, the Panel rightfully drew an adverse

inference from his failure to submit proof that he now keeps time

sheets and file records or attends some form of anger management

therapy.

In considering the appropriate sanction for respondent's

misconduct, we also take cognizance of a pro se supplemental

memorandum he has submitted to this Court (without his counsel's

knowledge) in opposition to the Committee's motion and in support

of his cross motion.  In this submission, respondent admits to

"making a few unintentional errors which were due to his

inexperience," but complains that the Committee has "conduct[ed]

an unrelenting witch-hunt in attempting to create misconduct

where none exists and to exploit such fabricated misconduct by

exacting a cruel punishment which would be inconsistent with the

established facts and with all norms of discipline necessary to

protect the public."  He accuses the Committee of "hypocrisy,

betrayal of the public trust, double-standards, in showing

preferential treatments to its cronies in its 'old boy network',

while engaging in ethnic animus toward those who are of ethnic

minorities or not well connected, and flagrant miscarriages of

justice."  These inflammatory claims are not supported by

16

respondent's references to other disciplinary cases.  Further,

respondent's bizarre, unsubstantiated arguments, as well as his

call for the prosecution of the Committee staff attorney assigned

to respondent's case, belie his representations that he is

addressing his manifest shortcomings in the area of anger-

management and his promise to comport himself henceforth in a

professional manner.  In sum, respondent's pro se supplemental

memorandum highlights the need for the imposition of a serious

disciplinary sanction.[3]

As a general rule, suspension is imposed on an attorney who

fails to return the unearned portion of a fee and engages in

other misconduct (*see Matter of Corcoran*, 243 AD2d 86, 88

[1998]).  Similarly, suspension is generally the appropriate

sanction for neglect coupled with additional misconduct (*see*

*Matter of Danas*, 236 AD2d 44 [1997]).  Under either of those

general rules, respondent's request for public censure should be

rejected.  The suspensions ordered in cases involving numerous

---

[3]After respondent filed his pro se supplemental memorandum,
his counsel directed a letter to this Court, clarifying that
counsel "did not draft, review or participate in [the]
submission" of this document, of which counsel did not "learn[] .
. . [until] after it was filed with the Court."  Counsel's letter
purports "to withdraw that submission and ask that it be
returned, expunged or destroyed before it is accepted by the
Court as a submission."  We decline this request, as the pro se
submission is relevant to this proceeding in its adverse
reflection on respondent's current fitness to practice law, and
in the light it casts on respondent's need to learn to exercise
greater self-control if he is to resume the practice of law.

17

instances of nonvenal misconduct approximating respondent's range

from one to three years.  Although the Committee seeks only an

18-month suspension, we find -- considering all of respondent's

misconduct, his continued attempts to place blame for his

failings on his clients and his deceased former employer, his

lack of sincere remorse, and his apparent failure to take

effective corrective actions regarding his office operations and

volatile temper -- that a three-year suspension is the

appropriate sanction in this case (see *Matter of Moore*, 197 AD2d

254 [1994] [neglect of eight legal matters, failure to satisfy a

judgment to return client fees, failure to promptly return

unearned fees, and attempt to dissuade clients from testifying

before the Committee]; *Matter of Sorote*, 196 AD2d 339 [1994] [13

disciplinary violations, including neglect and failure to return

an unearned fee]).

Accordingly, the Committee's motion should be granted to the

extent of confirming the Hearing Panel's findings of fact and

conclusions of law and sustaining charges 1-16 and 18-20 against

respondent, and respondent is suspended from the practice of law

for a period of three years, effective 30 days after the date

hereof and until further order of this Court.  Respondent's cross

motion is denied.

All concur.

Order filed.

18